Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EILEEN M. POMALES ORTIZ<br><br>Peticionaria<br><br>V.<br><br>JOSÉ F. RIVERA VEGA<br><br>Recurrido | KLCE202400457 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: GR2022CV00025<br><br>Sobre: Liquidación de Comunidad de Bienes |
|---|---|---|

Panel integrado por su presidenta; la Juez Domínguez Irizarry, la Juez Lebrón Nieves y la Juez Rivera Marchand

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de mayo de 2024.

El 23 de abril de 2024, compareció ante este Tribunal de Apelaciones, la señora Eileen M. Pomales Ortiz (en adelante, señora Pomales Ortiz o parte peticionaria), mediante recurso de *Certiorari*. Por medio de este, nos solicita que, revisemos la *Orden* emitida y notificada el 25 de marzo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Moción Informativa y en Solicitud de Orden* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega el recurso de *certiorari*.

### I

El caso de marras tuvo su origen el 4 de febrero de 2022, cuando la señora Pomales Ortiz interpuso una *Demanda* en contra del señor José F. Rivera Vega (en adelante, señor Rivera Vega o parte recurrida) sobre liquidación de comunidad de bienes post ganancial.

En esencia, la parte peticionaria arguyó que, estuvo casada con el señor Rivera Vega desde el 10 de diciembre de 1993, hasta el 13 de enero de 2022, cuando se divorciaron mediante sentencia dictada por el Tribunal de Primera Instancia. Consiguientemente, sostuvo que, existía una comunidad de bienes post ganancial que contenía activos y pasivos, que, al momento de la presentación de la *Demanda*, no había sido liquidada. Asimismo, surge de la *Demanda* que, durante la vigencia de su matrimonio, para el año 2000 el señor Rivera Vega firmó un contrato intitulado *Rivera-Pagán/Rivera-Vega Transfer and Consent Agreement*. Mediante este, el recurrido alegadamente adquirió con dinero perteneciente a la sociedad legal de gananciales, un negocio de distribución de bienes de servicios financieros de su padre, el señor José Rivera Pagán (en adelante, señor Rivera Pagán). Entre otras cosas, la parte peticionaria alegó que, el recurrido se encontraba en uso exclusivo del aludido negocio y que, además, le había excluido de la participación en los ingresos, administración, información financiera y administrativa de este. Solicitó al foro primario que ordenara a las partes preparar un inventario de bienes y avalúo para proceder con la liquidación de la comunidad de bienes post ganancial, así como un crédito mensual a su favor desde diciembre de 2021 hasta que se concretara la liquidación de bienes.

En respuesta, el 26 de abril de 2022, el señor Rivera Vega presentó la *Contestación a Demanda y Reconvención*. En esencia, la parte recurrida negó las alegaciones esbozadas en la *Demanda*, y sostuvo que, la señora Pomales Ortiz, para el mes de diciembre de 2021, recibió acciones y cheques como adelanto a la liquidación de la Sociedad Legal de Gananciales. Entre otras cosas, negó la existencia de algún negocio perteneciente a la comunidad de bienes post ganancial. De igual forma, adujo que, era contratista independiente de Primerica Financial Services, Inc. (en adelante,

Primerica), y que, mediante el contrato *Rivera-Pagán/Rivera-Vega Transfer and Consent Agreement,* se pactó la transferencia de derechos y obligaciones personales del señor Rivera Pagán hacia la parte recurrida. Asimismo, incluyó una reconvención, donde argumentó que, la parte peticionaria, para el año 1994, había suscrito un contrato con Primerica Financial Services, Inc., mediante el cual se comprometió a prestar sus servicios profesionales en calidad de contratista independiente. Sostuvo que, el referido contrato se mantenía vigente y que la señora Pomales Ortiz continuaba recibiendo beneficios bajo el código CCN73, al cual se refirió como un bien ganancial. Finalmente, le solicitó al Tribunal de Primera Instancia que ordenara la liquidación de la comunidad de bienes existentes entre las partes.

Para el 27 de abril de 2022, la señora Pomales Ortiz presentó la *Urgente Moción de Medidas Cautelares Provisionales para dar Acceso y Proteger la Participación de la Demandante en el Patrimonio Postganancial.* Reiteró lo alegado en la *Demanda,* y solicitó al foro primario que, emitiese las medidas cautelares correspondientes para no ser excluida del acceso y participación de los ingresos del negocio en cuestión. Entre las medidas cautelares solicitadas se encontraban las siguientes:

    a. Que se consignen en el Tribunal todos los ingresos que el negocio genera entre $70,000.00 y $90,000.00 dólares mensuales <u>netos</u>; o, en la alternativa, que se le pague la mitad de dichos ingresos a la Sra. Pomales.

    b. Que se incluya como titular a la Demandante (de manera conjunta) en cualquier cuenta bancaria, de acciones y/o inversiones del Demandado y/o relacionada directa o indirectamente con el negocio propiedad de la comunidad postganancial antes descrito.

    c. Que se incluya a la Demandante como accionista, dueña y oficial corporativo de cualquier corporación bajo la cual esté operando el negocio perteneciente a la comunidad postganancial antes descrito.

d. Que se produzcan y entreguen todos los documentos relacionados a cualquier corporación directa o indirectamente relacionada con el negocio propiedad de la comunidad postganancial antes descrito, incluyendo sin limitarse a, libros de la corporación, resoluciones corporativas, libros de contabilidad, estados bancarios, listado de clientes, auditorías, estados financieros, entre otros.

e. Que se entregue copia de todos los estados bancarios de cualquier cuenta bancaria, de acciones y/o inversiones del Demandante y/o directa o indirectamente relacionada al negocio propiedad de la comunidad postganancial antes descrito.

f. Que permita y ordene la co-administracion de la Demandante en el negocio de propiedad de la comunidad postganancial antes descrito.

g. Que se le conceda a la Demandante libre acceso y derecho propietario a cualquier cuenta y/o activo relacionado con el negocio propiedad de la comunidad postganancial antes descrito.

Posteriormente, el 16 de mayo de 2022, la peticionaria presentó la *Réplica a la Reconvención*. Mediante esta, solicitó que se desestimara la *Reconvención*.

Por otro lado, el 2 de junio de 2022, la parte recurrida presentó la *Oposición a: "Urgente Moción de Medidas Cautelares Provisionales para dar Acceso y Proteger la Participación de la Demandante en el Patrimonio Postganancial"*. Expresó que, no procedía la solicitud de la señora Pomales Ortiz, en la medida en que, esta no logró demostrar que procedían en derecho. Añadió que, todos los derechos, frutos, productos, y aumento que surgiesen de los contratos entre Primerica y el señor Rivera Vega, y entre este y el señor Rivera Pagán eran privativos de este para su beneficio y uso exclusivo y no pertenecían a la sociedad de gananciales o a la comunidad de bienes postganancial. A tales efectos, solicitó que, el foro primario declarara No Ha Lugar la solicitud de la parte peticionaria.

Mediante *Resolución* emitida el 2 de agosto de 2022, el foro de primera instancia declaró Ha Lugar la solicitud de la señora Pomales Ortiz y le ordenó al señor Rivera Vega que:

a. Certifique y entregue evidencia a la parte demandante de todos los ingresos, [c]réditos, provechos y beneficios que ha percibido y percibe de parte de Primerica desde diciembre de 2021 hasta el presente, y continúe recibiendo mensualmente hasta la liquidación de la comunidad postganancial;

b. Le pague la mitad de dichos ingresos, [c]réditos, provechos y beneficios a la Demandante, hasta tanto se liquide la comunidad postganancial, incluyendo los ingresos relacionados a los meses de diciembre de 2021 hasta el presente;

c. Produzca y entregue a la Demandante todos los documentos relacionados con el negocio existente con Primerica, incluyendo sin limitarse a, libros de contabilidad, estados bancarios, listado de clientes, auditorías, estados financieros, entre otros.

d. No podrá vender, disponer, defraudar, traspasar, fusionar, ceder, donar y/o transferir cualesquiera derechos y acciones de la empresa y negocio existente con Primerica, hasta la liquidación de la comunidad postganancial.

e. De igual forma, la parte demandante también deberá preservar y no podrá disponer, vender, defraudar, traspasar, ceder, donar y/o transferir cualesquiera bienes de la comunidad postganancial hasta su liquidación total.

En desacuerdo, la parte recurrida presentó un recurso de *Certiorari* ante este Foro, con identificación alfanumérica KLCE202200970, el cual fue resuelto mediante *Sentencia* emitida el 21 de septiembre de 2022. En virtud de dicho dictamen, este Tribunal confirmó la *Resolución* emitida el 2 de agosto de 2022, pero modificó el lenguaje dispuesto en cuanto al *inciso c*, a los efectos de eliminar la frase "entre otros" y entrega de listas de clientes. Así, se delimitó la orden de entrega y acceso a la información requerida en el *inciso c* por la coadministradora de la comunidad de bienes gananciales, en lo pertinente a los ingresos y coadministración del negocio lo cual no implicaba la transferencia de los códigos 42470, 43361 y KG582 y entrega del listado de clientes.

Para el 12 de diciembre de 2022, Primerica presentó la *Moción Asumiendo Representación Legal y Solicitud de Orden Protectora*, donde le solicitó al foro *a quo* que, autorizara la consignación de la

mitad de la compensación debida a la parte recurrida por parte de Primerica y que, emitiera una orden protectora con el propósito de proteger la información confidencial sobre terceros ajenos al caso. Por su parte, la señora Pomales Ortiz presentó la *Oposici[ó]n a: Solicitud de Orden Protectora [...] (SUMAC 97)*.

El 24 de enero de 2023, la parte recurrida presentó la *Urgente Moción de Medidas Cautelares Provisionales y Créditos*. Por medio de la aludida moción, el señor Rivera Vega sostuvo que, existía un crédito a su favor, puesto que, realizó una serie de gastos respecto a la comunidad de bienes post ganancial. Arguyó, además que, la señora Pomales Ortiz mantenía un monopolio respecto al código CCN73, adscrito por Primerica a la parte peticionaria, que devengaba ingresos y beneficios pertenecientes a la comunidad post ganancial. De igual manera, le solicitó al foro de primera instancia que le ordenara a la señora Pomales Ortiz a pagar la mitad de lo percibido bajo el código CCN73, hasta tanto se realizara la liquidación de la comunidad de bienes post ganancial.

El 26 de enero de 2023, se celebró la *Vista de Discusión de Moción*[1]. En corte abierta, el foro *a quo* declaró No Ha Lugar a la *Urgente Moción de Medidas Cautelares Provisionales y Créditos*[2]. De igual manera, declaró No Ha Lugar la solicitud de orden protectora presentada por Primerica.

Inconforme con dicha determinación, el 27 de febrero de 2023, el señor Rivera Vega presentó ante este Tribunal de Apelaciones un recurso de *Certiorari* el cual fue identificado alfanuméricamente como KLCE202300184. Mediante *Resolución* emitida el 20 de marzo de 2024, desestimamos el aludido recurso por falta de jurisdicción, por motivo de que la *Minuta* recurrida en esa ocasión, no cumplía con el requisito de incluir la firma de la juez que presidió la vista.

---

[1] *Minuta* del 26 de enero de 2023, transcrita el 2 de febrero de 2023.
[2] *Minuta* del 26 de enero de 2023, transcrita el 2 de febrero de 2023.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 13 de septiembre de 2023 fue celebrada una *Conferencia Sobre el Estado de los Procedimientos*[3]. En esta, las partes comunicaron que se coordinaron las deposiciones y que, cualquier asunto pendiente sería resuelto al amparo de la Regla 34.1 de las Reglas de Procedimiento Civil. Entre otras cosas, el Tribunal de Primera Instancia les concedió a las partes como fecha límite el 29 de septiembre de 2023 para actualizar el listado de los posibles testigos.

De igual manera, el 14 de diciembre de 2023, fue celebrada otra *Conferencia Sobre el Estado de los Procedimientos*[4]. Según surge de la *Minuta*, el foro primario concedió un término de treinta (30) días a la representación legal de la parte peticionaria para informar la prueba documental que necesitara por parte de Primerica, como también, para informar si iba a deponer a alguna persona adicional. Añadió que, partiendo de la premisa de que se realizaría la deposición adicional, concedió noventa (90) días para culminar el descubrimiento de prueba, hasta el 14 de marzo de 2024. Igualmente, les apercibió a las partes que no habría término adicional.

El 16 de enero de 2024, la parte peticionaria presentó la *Moción Informativa*, donde expresó que, aunque la parte recurrida había anunciado prueba pericial, al momento de la presentación de la moción no había recibido ningún informe sobre tal asunto. Sin embargo, indicó que, de recibirse alguna prueba pericial se reservaba el derecho de deponer al perito dentro del término concedido por el foro de primera instancia.

---

[3] *Minuta* del 13 de septiembre de 2023, transcrita el 6 de octubre de 2023.
[4] *Minuta* del 14 de diciembre de 2023, transcrita el 21 de diciembre de 2023.

El Tribunal de Primera Instancia, por medio de *Orden* emitida en igual fecha, le concedió a la parte peticionaria diez (10) días para informar si estaría utilizando prueba pericial.

Por otro lado, la parte recurrida presentó la *Urgente Moci[ó]n para que se Dicte Orden.* En virtud de esta, sostuvo que, la parte peticionaria no había cumplido con la *Orden* emitida por el Tribunal el 16 de enero de 2024.

El mismo día, la señora Pomales Ortiz presentó *Moción en Cumplimiento de Orden,* donde indicó que se proponía utilizar como prueba pericial al CPA Luis A. Martínez-Renta. En respuesta, el señor Rivera Vega presentó la *Urgente Réplica,* en la cual solicitó al foro primario que no permitiera prueba pericial de la parte peticionaria debido a que, esta había incumplido en dos ocasiones con actualizar el listado de sus testigos y en particular, por incumplir con la orden de informar su prueba pericial dentro del término concedido.

Mediante *Orden* emitida el 29 de enero de 2024, la primera instancia judicial declaró No ha Lugar la *Urgente Moci[ó]n para que se Dicte Orden.* De igual manera dispuso lo siguiente:

> El descubrimiento de prueba se dará por terminado el 20 de marzo de 2024. Lo no descubierto para dicha fecha, no se podrá incluir en el Informe de Conferencia con Antelación al Juicio.

> Las partes deben cumplir con la Regla 34.1 de Procedimiento Civil, so pena de sanciones.

En esa misma fecha, el foro primario emitió otra *Orden* donde expresó que "No habr[á]n m[á]s modificaciones en cuanto a peritos".

El 1ro de marzo de 2024, la parte peticionaria presentó la *Moción Urgente de Orden para que se Descubra lo Solicitado a Primerica.* Arguyó que, pese a que había notificado a Primerica un requerimiento de producción de documentos, esta última se había mantenido ignorando el mismo. A estos efectos, le solicitó al foro *a quo* que le ordenara a Primerica a producir lo solicitado.

En igual fecha, el Tribunal de Primera Instancia emitió una *Orden*, donde declaró Ha Lugar lo solicitado por la señora Pomales Ortiz en la *Moción Urgente de Orden para que se Descubra lo Solicitado a Primerica* y ordenó que tal orden fuese cumplida en o antes de cinco (5) días a partir de la notificación so pena de desacato.

El 14 de marzo de 2024, la señora Pomales Ortiz presentó *Moción Informativa sobre Incumplimiento de Primerica y en Solicitud de Orden*, donde informó que había transcurrido el término concedido por el foro de primera instancia sin que Primerica hubiese cumplido con el requerimiento de producción de documentos. Asimismo, añadió que, no había podido completar la deposición del señor Rivera Vega, la cual se "encontraba pendiente y abierta hasta tanto se obtuviera la información y documentación relevante que obra en poder de PRIMERICA". Sostuvo, además, que tal información y documentos formaban parte del análisis pericial del procedimiento. El Tribunal de Primera Instancia, emitió *Orden* ese mismo día, mediante la cual le concedió término a la parte peticionaria hasta el 21 de marzo de 2024 para culminar la deposición a la parte recurrida, y le apercibió que, no se le concederían más prórrogas.

El 21 de marzo de 2024, la parte peticionaria presentó la *Moción Informativa y en Solicitud de Orden.* Por medio de la aludida moción, la parte peticionaria arguyó que, la parte recurrida había notificado su Informe Pericial el último día concedido para el descubrimiento de prueba. Sostuvo que, ello incidía con su derecho a deponer al perito anunciado. Es por lo que, solicitó a la primera instancia judicial que le permitiera la deposición del perito anunciado por la parte recurrida. Propuso que la misma se llevara a cabo en cualquier fecha entre el 15 al 22 de abril de 2024. Igualmente, añadió que, Primerica había contestado parcialmente la

producción de documentos y que por ello, se encontraba en incumplimiento con la orden del Tribunal.

En respuesta, la parte recurrida presentó la *Urgente R[é]plica a: "Moción en Solicitud de Orden".* En virtud de esta, la parte recurrida indicó que, desde el 29 de septiembre de 2023 había anunciado su perito y actualizado el listado de testigos según ordenado, y que, a pesar de ello, la parte peticionaria nunca había citado o enviado un aviso de deposición al perito anunciado.

Finalmente, el 25 de marzo de 2024, la primera instancia judicial emitió una *Orden* donde declaró No Ha Lugar lo solicitado por la parte peticionaria.

Inconforme con tal determinación, el 23 de abril de 2024, la señora Pomales Ortiz compareció ante este Tribunal mediante el recurso que nos ocupa y esgrimió los siguientes señalamientos de error:

**Primer Señalamiento de Error**
Erró y abusó de su discreción el TPI al negarle el derecho a la peticionaria de deponer al perito del Recurrido y/o llevar a cabo descubrimiento de prueba en relación al Informe pericial.

**Segundo Señalamiento de Error**
Erró y abusó de su discreción el TPI al impedirle a la peticionaria presentar prueba pendiente de ser producida por un tercero, de conformidad con una orden final y firme emitida por el propio TPI cuando aún no había concluido el descubrimiento de prueba coart[á]ndole así su debido proceso a presentar prueba en apoyo a su reclamación.

**Tercer Señalamiento de Error**
Erró el TPI al no implementar y/o tomar medidas y providencias para que Primerica Financial Services cumpliera con la Orden emitida por el propio Tribunal, despojando con ello a la Peticionaria de información y documentación esencial (sic) para defender su reclamo.

Transcurrido el término reglamentario, sin que compareciera la parte recurrida a exponer su postura, disponemos del recurso sin el beneficio de su comparecencia.

## II

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[5]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

---

[5] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de **decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales**, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro). [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Torres González v. Zaragoza Meléndez*, supra, pág. 820

De igual manera, la precitada regla procesal "reconoce que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata". *Íd.* págs. 820-821 citando a Hernández Colón *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, pág. 533.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna*

*Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

## B. Jurisdicción

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89 (2020); *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011). Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022); *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009). La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374 (2020); *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018); *Suffront v. AAA*, 164 DPR 663, 674 (2005).

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada. *Yumac Home Furniture v. Caguas Lumber Yard*, 194 DPR 96, 107 (2015); *Mun. De San Sebastián v. QMC Telecom*, 190 DPR 652, 600 (2014); *Suffront v. AAA*, supra, pág. 674; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394-395 (2022).

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones[6], confiere facultad a este Tribunal para a iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

## C. Manejo de Sala

Como es sabido, nuestra más Alta Curia ha reconocido que, los foros de instancia gozan de amplia discreción en la tramitación de los casos ante su consideración, de manera que, se pueda asegurar la más eficiente administración de la justicia. *Vives Vázquez v. ELA*, 142 DPR 117 (1996); *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330 (1987).  Conforme a ello, con el propósito de mantener un funcionamiento efectivo de nuestro sistema judicial, y de que se dispongan los asuntos litigiosos de forma rápida, es necesario que los juzgadores de instancia ostenten "gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales". *In re Collazo I*, 159 DPR 141 (2003).  Ello implica que, estos deberán gozar de poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar aquellos correctivos apropiados, de acuerdo a su buen juicio[7]. En virtud de estos poderes, los foros de instancias tienen disponibles múltiples mecanismos procesales para asegurar y mantener el orden de los procedimientos que atienden, para hacer cumplir sus órdenes y para realizar cualquier acto necesario para cumplir a cabalidad sus funciones. *Íd.*; *ELA v. Asoc. de Auditores*, 47 DPR 669 (1999).

Nuestra última instancia judicial ha señalado que, "[e]specíficamente, la discreción ha de ceder en las circunstancias en las que se configura: un craso abuso de discreción o que el

---

[6] 4 LPRA Ap. XXII-B, R. 83.
[7] *Íd.* pág. 150.

tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación." *Banco Popular de Puerto Rico v. Andrés Gómez Alayón y otros,* 2023 TSPR 145, 212 DPR ____ (2023).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no [hay] duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 435.

Si la actuación del tribunal de instancia no se encuentra desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, prevalecerá el criterio del juzgador de hechos a quien le corresponde la administración del proceso para disponer de los procedimientos ante su consideración. *Sierra v. Tribunal Superior,* 81 DPR 554 (1959).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Como tribunal apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso

presentado. Por ello, en el caso de autos, debemos determinar en primera instancia, si el promovente del recurso ha planteado un asunto comprendido en alguna de las excepciones de la Regla 52.1, *supra*. Veamos.

Conforme surge del tracto procesal antes reseñado, la parte peticionaria recurre de una *Orden* emitida por la primera instancia judicial, donde declaró No Ha Lugar la *Moción Informativa y en Solicitud de Orden.* En la aludida moción, la parte peticionaria había solicitado al foro *a quo* que se le permitiera deponer al perito anunciado por la parte recurrida fuera del término dispuesto para concluir el descubrimiento de prueba.

De un minucioso examen del recurso de epígrafe, colegimos que, la solicitud planteada por la parte peticionaria no se encuentra dentro de los asuntos comprendido en alguna de las excepciones de la Regla 52.1, *supra*. Veamos.

Según el derecho expuesto, la Regla 52.1, *supra*, dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia **cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales**, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro).
[. . .]

Queda claro que la precitada regla se limita a decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, no sobre asuntos de descubrimiento de prueba ajenos a tal disposición. En el caso de marras se trata de un asunto de un término concedido

por el foro *a quo* para culminar descubrimiento de prueba, asunto que se refiere estrictamente al manejo de caso del foro primario. Cabe destacar que, reconocemos la discreción del foro primario en el manejo de sala y en la tramitación de los asuntos ante su consideración.

En la medida en que la actuación del tribunal de instancia no se encuentra desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, será necesario que prevalezca el criterio del juzgador de hechos a quien le corresponde la administración del proceso para disponer de los procedimientos ante su consideración[8].

Evaluado el recurso presentado por la parte peticionaria, al amparo de los criterios para la expedición del auto de *certiorari,* en ausencia de estos resolvemos no intervenir con el mismo.

**IV**

Por los fundamentos antes expuestos, se deniega el recurso de *Certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] *Sierra v. Tribunal Superior,* supra, pág. 572.